Filed 3/11/24  B.J. v. Superior Court CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| B.J.,<br><br>　　　　Petitioner,<br><br>　　　　v.<br><br>SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>　　　　Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　　Real Party in Interest. | B331724<br><br>(Los Angeles County<br>Super. Ct. No. 19CCJP03095 A–C) |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Tamara Hall, Judge Presiding.  Petition denied.

Law Office of Vincent W. Davis & Associates and Vincent W. Davis for Petitioner.

No appearance for Respondent.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Real Party in Interest.

Children's Law Center and Taylor Lindsley for Minors.

B.J. (Mother) is the mother of A.Z., A.M., and I.M., dependent children of the juvenile court under Welfare and Institutions Code section 300.[1]  Mother filed a petition for extraordinary writ seeking review of the court's order terminating family reunification services and setting a section 366.26 hearing for January 8, 2024.  The petition is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

A.Z., A.M., and I.M. became dependents of the juvenile court in 2019 after Mother, who was driving two of the children while she was under the influence of alcohol and methamphetamine, had a serious car accident in which both children were injured, one severely.

Although her reunification services previously had been terminated, in January 2023 the juvenile court granted Mother's section 388 petition and ordered six additional months of reunification services, specifically providing that Mother would not receive case plan credit for previously completed programs. Mother's case plan required her to undergo weekly random and on-demand drug and alcohol testing; parenting education; individual counseling to address substance abuse and its impact on children; and mental health counseling with a psychological assessment and evaluation.  She was also ordered to take all prescribed psychotropic medications.  On May 15, 2023, after Mother missed two drug tests and the Los Angeles County Department of Children and Family Services (DCFS or Department) received reports that she was drinking alcohol, the court also ordered Mother to complete a full drug and alcohol

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

program with aftercare and a full 12-step program with a sponsor.

I.     August 23, 2023 Hearing and Ruling

On August 23, 2023, the court conducted a contested review hearing at which Mother and the maternal grandmother testified.  After the presentation of evidence and argument, the court terminated reunification services and set a hearing pursuant to section 366.26 to select and implement a permanent plan for the children.

The court explained in detail the factual basis for its findings and orders.  It said it had provided Mother "time and time again, opportunities to maintain sobriety, but Mother chooses not to."  The court observed Mother had testified "she ha[d] not consumed any alcohol and everyone [reporting her alcohol consumption] is just not telling the truth."  However, Mother's social media during the current reunification period showed her with a beer to her lips, contradicting her testimony. The court credited evidence that Mother "uses alcohol in excess" and was observed to be drinking or under the influence of alcohol several times.  First, Mother was drunk at the oldest child's birthday party, and that child was frightened when she witnessed Mother stumbling and vomiting.  Second, Mother smelled of alcohol when she was picked up by one of the caregivers to go to an amusement park with the children.  Third, the paternal grandmother had seen Mother stumbling and under the influence of alcohol.  Fourth, Mother asked for beer at the home of one of the children's caregivers.  When the caregiver refused because the children were present, Mother said she would drink away from the children and proceeded to consume it. Finally, one of the children reported that Mother drank alcohol "a

3

lot" and could identify the name of the beer she drank.

The court found "not credible" and "disingenuous" Mother's testimony that her recent positive result for cocaine on a drug test was due to diet pills.

The court evaluated Mother's testimony that she was participating in a 12-step program, but she did not know what step she was on because she did not complete them in order. The court found the testimony "a clear indicator that Mother does not know and is in complete denial of her . . . addiction problem," because "[t]he first step in the 12-step program is to admit one has a problem, to admit one has an addiction. Unless and until one can do so, they can't move on to the second step, which is acceptance." The court expressed skepticism of Mother's claim that a family member was her 12-step sponsor, and it found telling her description of herself as an addict rather than a recovering addict. Noting these were terms of art in the recovery context, the court explained that a recovering addict "admits that they have an addiction and they are dealing with sobriety one day at a time, and they maintain contact with their sponsor, and they go to [12-step] meetings on a regular basis," while an addict continues to abuse substances and is in denial.

The court found there was no evidence Mother had completed any programming during the current reunification period.

The court concluded there would be a substantial risk placing the children in Mother's care, even if Mother were to reside with the maternal grandmother. The maternal grandmother could not be counted on to protect the children: the children had previously been removed from her because of physical abuse. The court found the maternal grandmother could

4

not be counted on to report objectively about Mother, as she testified Mother is "perfect in all respects" but told one of the children Mother went out at night frequently.

Given all this evidence, and particularly Mother's denial that her addiction needed to be addressed, the court found there was no evidence that in the next six months Mother would be able to address the causes of dependency jurisdiction.

The juvenile court found continued jurisdiction was necessary because conditions still existed that justified the court taking jurisdiction pursuant to section 300; Mother's progress on her case plan had been "unsubstantial"; by clear and convincing evidence, returning the children to Mother's physical custody would create a substantial risk of detriment to them, creating a continued necessity for and appropriateness of the current placement; and by clear and convincing evidence, DCFS had complied with the case plan in making reasonable efforts to return the children to a safe home and to complete all necessary steps to finalize their permanent placement. The court set the section 366.26 hearing for January 8, 2024.

II.    Writ Petition

Mother filed a petition for extraordinary writ seeking review of the juvenile court's order terminating reunification services and setting a section 366.26 hearing. Mother makes three claims in her petition and memorandum.

First, Mother contends there was no substantial evidence "to support a finding that the children suffered or there was a substantial risk that the children would suffer if returned to their mother's care." In support of this argument, Mother sets forth general case law, then states she had completed her case plan prior to January 2023; specifically, she had completed a relapse

5

prevention program and classes on parenting, domestic violence, and anger management; she attended therapy; and she had 12 negative drug tests and two no-shows.  Additionally, she states she maintained positive and consistent contact with the children.  Without analysis, Mother then concludes, "Clearly, there was no substantial evidence" supporting the court's finding.

Second, Mother challenges the children's continued placement out of her custody.  After stating general legal principles, Mother asserts, "In this case, when viewed in the light most favorable to the judgment, the evidence available to the court did not support its conclusion that Petitioner's mental health history and religious beliefs amounted to substantial evidence that showed, clearly and convincingly[,] that removal was the only way to protect the child from the risks associated with remaining in Petitioner's custody."[2]  She states DCFS admitted she had completed her case plan and reiterates the services she listed in her first argument.  Without argument as to how these facts demonstrate error, Mother concludes the court erred when it failed to return the children to her with a safety plan.

Third, Mother asserts she did not receive reasonable reunification services.  After citing general case law, she states she completed her case plan at agencies she found, not those to which DCFS had referred her; "therefore, this Court must find that DCFS did not make a good faith effort to provide [Mother] with reasonable services, and the Department failed to meet its

---

[2]     Presumably this sentence is a result of a copy/paste error, because here there are three children, and they were not removed from Mother on the basis of her mental health history or religious beliefs.

burden of proof." She repeats her completed programming, her drug tests, and her positive visitation. Once more without analysis, Mother then concludes that the court's findings regarding reasonable reunification services were not supported by clear and convincing evidence and must be reversed.

On November 21, 2023, we issued an order to show cause and stayed the section 366.26 hearing scheduled for January 8, 2024.

DCFS and the three children oppose Mother's petition.

## DISCUSSION

Mother challenges the sufficiency of the evidence to support several of the juvenile court's findings. " ' " 'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence[,] contradicted or uncontradicted[,] which will support the finding of fact.' " ' " (*Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 511–512; see also *In re I.J.* (2013) 56 Cal.4th 766, 773.) " ' "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' " (*I.J.*, at p. 773.)

" '[I]t is presumed that the evidence is sufficient to support [the trier of fact's] factual findings, and it is the appellant's burden to demonstrate that it does not. . . . And in furtherance of that burden, the appellant must fairly summarize the facts in the light favorable to the judgment.' " (*Symons Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 598.)

7

Specifically, " '[a] party who challenges the sufficiency of the evidence to support a particular finding must *summarize the evidence* on that point, *favorable and unfavorable*, and *show how and why it is insufficient.*' " (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738; see also Cal. Rules of Court, rule 8.452(b)(1), (3) [memorandum supporting writ petition seeking review of a juvenile court's setting order "must provide a summary of the significant facts," explain the significance of any cited portion of the record and note any disputed aspects of the record].)  Presenting only facts and inferences favorable to one's position forfeits any claim of error.  (*Schmidlin*, at p. 737.)

Additionally, to demonstrate error, "appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.]  When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.]  Hence, conclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408; see also *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078 ["Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review"].)  We are not obligated to make arguments for litigants, and we may and do disregard conclusory arguments failing to disclose the reasoning by which the litigants reached the conclusions they ask us to adopt.  (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

Finally, California Rules of Court, rule 8.452(b)(3) requires the memorandum accompanying a petition for writ review of an

8

order setting a section 366.26 hearing to "support any reference to a matter in the record by a citation to the record."  We " ' "cannot be expected to search through a voluminous record to discover evidence on a point raised by [a party] when [their] brief makes no reference to the pages where the evidence on the point can be found in the record." ' "  (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745.)

Mother's memorandum in support of her petition fails on all these fronts.  She ignores all unhelpful evidence and fails to disclose the evidence supporting the juvenile court's order.  Her presentation of her own evidence is scarcely better: she offers only conclusory factual statements without a single citation to the record to support them.  Additionally, Mother makes no legal argument at all.  She simply states general principles of law, asserts a few purported facts without analyzing how they show there was no substantial evidence to support the court's findings, and tacks on a conclusion that the evidence was insufficient and she is entitled to relief.

Construing the petition liberally (Cal. Rules of Court, rule 8.452(a)(1)), we must conclude Mother's petition is so deficient as to forfeit her challenges to the sufficiency of the evidence.  The dependency proceeding here has been ongoing for more than four years and has resulted in a voluminous record: the clerk's transcript is more than 3,000 pages long, and the reporter's transcript runs to 14 volumes.  Even if we were to overlook the omission of citations to the record and search this extensive record for evidence ourselves, Mother has not offered any argument that would afford a basis for relief, and she has failed even to acknowledge the evidentiary basis for the court's ruling, much less substantively dispute its sufficiency.

9

While a court may consider the merits of a petition despite deficiencies where unusual facts show a refusal to entertain it on the merits would risk grave injustice (*Nahid H. v. Superior Court* (1997) 53 Cal.App.4th 1051, 1056), an examination of Mother's specious arguments and the court's ruling demonstrates there is no such risk here. Mother had been ordered in May 2023 to complete a full drug and alcohol program with aftercare and a 12-step program with a sponsor; the court found there was no evidence she had attended any programs during the current reunification period, and it did not believe her testimony that she was participating in a 12-step program given her implausible testimony about it. The court found Mother used alcohol to excess, had a positive drug test for cocaine, and was in complete denial with respect to her addiction, none of which does she dispute. Mother does not challenge any of the evidence upon which the court relied in making its findings and orders, and she does not contend its analysis of this evidence was in any respect inaccurate.

Mother's entire argument against continued jurisdiction and the children's removal is a disingenuous claim that she had completed her case plan before January 11, 2023, had 12 negative tests and two no-shows, and had positive visits. But this reunification period did not start until January 24, 2023, and on that date the court ordered Mother to participate in a variety of programs and services—with an express order that her previously-completed services did not satisfy her case plan. Mother's misleading and unsupported factual representations about her case plan and completed programming, therefore, have nothing to do with the present reunification period. Her argument that her reunification services were inadequate is the

same list of services she completed at some unspecified time and the absurd pronouncement that because she completed her programs at agencies she located and not those DCFS referred her to, the court was required to find DCFS had not made a good faith effort to provide her with services. We therefore find no risk of grave injustice from our conclusion that Mother has forfeited her challenges to the sufficiency of the evidence.[3]

---

[3] Mother's memorandum in support of her position is so poorly drafted that in some instances it cannot be determined what orders she challenges. For instance, it is not clear whether Mother claims the initial removal of the children from her custody in 2019 or the refusal to return them to her custody at the August 2023 hearing was not supported by substantial evidence. To the extent Mother intends to challenge the 2019 disposition order (including the underlying jurisdictional findings), that order has long been final and cannot now be reviewed. (§ 395, subd. (a)(1); *In re S.B.* (2009) 46 Cal.4th 529, 532 [disposition order is the judgment for purposes of appeal; if no timely appeal is made, the order is final and binding, the issues it determined are res judicata, and it may not be attacked on appeal from a later appealable order]; *In re Candida S.* (1992) 7 Cal.App.4th 1240, 1249 [jurisdictional finding is not separately appealable but may be reviewed on appeal from disposition order].)

## DISPOSITION

The order to show cause is discharged, and the petition is denied.  The stay is dissolved.  This opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A) of the California Rules of Court.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.