Filed 3/27/24  In re V.A. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re V.A. et al., Persons Coming Under the Juvenile Court Law. | B327613 |
| _____ | (Los Angeles County Super. Ct. No. 22CCJP03783A-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| J.Q., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tamara Hall, Judge.  Dismissed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly G. Emling, Deputy County Counsel, for Plaintiff and Respondent.

J.Q. (Father) is the father of four children: 16-year-old daughter V.A., 15-year-old daughter K.A, 13-year-old daughter N.A., and nine-year-old son C.A. (collectively, Minors).[1]  The juvenile court assumed dependency jurisdiction over Minors based on its findings that Father manhandled V.A. and punched K.A. in the face during a quarrel in public and had, on prior occasions, struck all of his children in anger.  We consider (1) whether the appeal should be dismissed as moot as to the three younger children in light of the juvenile court's later order terminating dependency jurisdiction over them and (2) whether the appeal should be dismissed as to the oldest child because the disposition hearing as to her was not completed (her whereabouts were then unknown) at the time the appeal was noticed.

## I.  BACKGROUND

*A.      The Dependency Investigation and Petition*

On Sunday, August 21, 2022, Damela Romo (Romo) saw Father chase after V.A. and K.A., grab them each by an arm, and pull them back toward him.  V.A. broke free from Father's grasp and Father raised his right arm and punched K.A. in the face.  According to Romo, the punch was so loud she was able to hear the impact from where she was standing.  She videotaped the aftermath of the incident, which appeared to show V.A. and K.A. crying, and then called the police.

When interviewed by the police, Father (who was separated from Minors' mother) explained he worked as a street vendor selling food and he brought his children to work with him

---

[1]      These were Minors' ages when dependency proceedings began.

because there was no one else to look after them. According to Father, when he saw his two older daughters get out of an unfamiliar automobile driven by men he did not recognize, he began upbraiding them and grabbed their arms to bring them back to his food stand. He denied striking or slapping either of his daughters.

V.A. and K.A. told the police the incident began when they asked two friends to drive them to a nearby fast food restaurant so they could use the restroom. When they returned, Father became outraged and grabbed them by their arms. V.A. escaped from Father's hold, but Father struck K.A. in the face.[2]

The police reported the matter to the Los Angeles County Department of Children and Family Services (the Department). A Department social worker interviewed Minors, who had been taken into protective custody and placed with a family friend. V.A. and K.A. said that Father slapped them and their siblings on prior occasions when they failed to help him with the food stand, but they denied these slaps ever left any marks or bruises. N.A. related that, on the day of the incident before her older sisters returned, Father "smacked" her with an open hand on the back of the head and on the chest after she told him she did not know where her sisters had gone. N.A. and C.A. also said that Father had in the past "smack[ed]" them with an open hand when angry.

In September 2022, the Department filed a multi-count dependency petition asking the juvenile court to assume jurisdiction over Minors under Welfare and Institutions Code

---

[2]     V.A. told the police Father struck her sister with his fist, while K.A. stated he slapped her with his open palm.

section 300, subdivisions (a), (b)(1), and (j).[3]  At the initial detention hearing, the juvenile court ordered the three younger siblings released into their parents' care under Department supervision.  The whereabouts of V.A. were then unknown, and the court ordered her detained "at large" under the Department's supervision and issued a protective custody warrant for her.

Before the adjudication hearing, the Department reported K.A. resided with Mother, N.A. and C.A. lived with Father, and V.A.'s whereabouts remained unknown.  The juvenile court sustained the petition at an adjudication hearing in February 2023, finding all four Minors (including V.A.) were persons described by section 300, subdivisions (a), (b), and (j).  The court placed each Minor in the home of their parents under the Department's supervision.  As to V.A., the court set a future warrant status hearing while maintaining the previously issued protective custody warrant in full force and effect.

Father appealed the juvenile court's jurisdiction findings in a notice of appeal filed five days after the jurisdiction hearing.  During the pendency of the appeal, this court took judicial notice of subsequent minute orders entered by the juvenile court.  A judicially noticed last minute information report submitted by the Department in advance of a dependency review hearing in August 2023 states "[V.A.'s] status remains AWOL" and recommends the juvenile court keep her case open while terminating jurisdiction for the other Minors "with a Family Law Order giving joint legal, joint physical [custody] to the parents."  The subsequent minute orders issued in connection with the

---

[3]     Undesignated statutory references that follow are to the Welfare and Institutions Code.

4

August 2023 review hearing indicate the juvenile court terminated jurisdiction over K.A., N.A., and C.A. and released them to "parent(s)."  The August 2023 minute order concerning V.A. states her whereabouts remain unknown, the protective custody warrant remains in full force and effect, and the "[c]ourt continues the disposition hearing to 2/15/24."

## II.  DISCUSSION

We shall dismiss the appeal because it is in large part moot and, in case of V.A., is taken from a non-appealable order.

"A court is tasked with the duty "'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"  [Citation.]  A case becomes moot when events "'render[ ] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief.'"  [Citation.]  For relief to be 'effective,' two requirements must be met.  First, the plaintiff must complain of an ongoing harm.  Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks.  [Citation.]  [¶]  This rule applies in the dependency context.  (*In re N.S.* (2016) 245 Cal.App.4th 53, 60 ['the critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error'].)"  (*In re D.P.* (2023) 14 Cal.5th 266, 276.)

The Department's respondent's brief argues the appeal is moot as to the three youngest children who were before the juvenile court during the proceedings below.  That is correct.  Although the juvenile court initially took dependency jurisdiction

5

over all three children, the judicially noticed orders indicate the court has since terminated its jurisdiction and returned the children to their parents' custody.  There is accordingly no effective relief we can provide even were we to find any of the jurisdiction findings against Father infirm.  (*D.P.*, *supra*, 14 Cal.5th at 277 ["relief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status'"].)  Father has not argued we should exercise our discretion to reach the moot jurisdictional issue, so we shall dismiss as moot the appeal as to K.A., N.A., and C.A.

The same reasoning does not apply to V.A. because her whereabouts remained unknown in August 2023 and the court kept her case open by continuing her disposition hearing to a later date.  But dismissal is still required for the separate reason articulated by the Department: the appeal as to V.A. was taken from a non-appealable order.  Dependency court orders become appealable only after the juvenile court concludes disposition.  (Welf. & Inst. Code, § 395 ["A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment"]; *In re S.B.* (2009) 46 Cal. 4th 529, 532 ["The dispositional order is the 'judgment' referred to in section 395, and all subsequent orders are appealable"].)  Because the disposition hearing as to V.A. was not completed at the time the appeal was noticed, the appeal must be dismissed as taken from a non-appealable order.

DISPOSITION

The appeal is dismissed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.

We concur:



MOOR, J.



KIM, J.